IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **SHERRIE W. RUSSELL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No.: 5:11-cv-03801-AKK |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION**

Plaintiff Sherrie W. Russell ("Plaintiff") brings this action pursuant to Title II of Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration[1] ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB"). *See also* 42 U.S.C. § 405(g). After careful review, the court finds that the decision of the Commissioner is due to be affirmed.

**I.   Proceedings Below**

Plaintiff applied for DIB on March 11, 2008 alleging disability beginning on February 2, 2007 due to fibromyalgia, migraine headaches, allergies, and depression.[2] [R. 120-126; 163]. The Social Security Administration denied Plaintiff's claim on March 2, 2008. [R. 93]. Plaintiff

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Therefore, she should be substituted for Commissioner Michael J. Astrue as Defendant in this suit. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.").

[2] The record also reflects that Plaintiff filed an application for supplemental security income benefits ("SSI") on March 11, 2008. [R. 116-119]. However, the ALJ's decision only addresses Plaintiff's application for DIB and Plaintiff does not appeal any adverse SSI determination. [*See* R. 25-49; Pl.'s Mem. 1].

requested [R. 100] and received a hearing before an administrative law judge ("ALJ") on December 17, 2009. [R. 50-90]. The ALJ issued an opinion on February 9, 2010 denying Plaintiff's application. [R. 28-45]. On September 1, 2011, the Appeals Council denied Plaintiff's request for review [R. 1-7], making the Commissioner's decision final and a proper subject of this court's judicial review. *See* 42 U.S.C. § 405(g).

### A.     Plaintiff's Hearing Testimony

At the time of the hearing, Plaintiff was 38 years old and had a college education. [R. 55, 58]. Plaintiff testified that she last worked on February 2, 2007 as a clerk for the United States Postal Service. [R. 59]. Plaintiff sorted the mail and worked the front counter selling stamps and postage. [R. 61]. Plaintiff stated that she quit her job because she would "come home in pain."[3] [R. 59]. Plaintiff had not looked for work since February 2007. [R. 63].

Plaintiff testified that she could lift five to ten pounds. [R. 64-65]. She also stated that she could only sit for ten minutes before needing to get up or reposition herself. [R. 65]. Plaintiff then testified that she could probably sit for 30 minutes to an hour. [R. 65]. She also stated that she could stand for an hour before needing to sit down. [R. 65]. According to Plaintiff, she "ache[d]" when she walked. [R. 65]. She also testified that she needs to nap about 30 minutes a day two to three days a week. [R. 66]. Plaintiff stated that her fibromyalgia was impacted by the weather and that if she did not sleep well, her pain was worse. [R. 67]. Plaintiff described her pain as "like pulling a nerve...out of your body." [R. 76]. Plaintiff testified that she took medication for her fibromyalgia three times a day. [R. 73]. Plaintiff stated that Ultraset "worked" as long as she took it regularly. [R.

---

[3] The ALJ questioned Plaintiff regarding a report in the record that indicated she quit her job due to "health in family." [R. 82]. Plaintiff said the "family" part was "probably just to be with [her] daughter." [R. 82].

78]. Plaintiff was also currently taking Seroquel to help her sleep and testified that she believed it was working. [R. 68]. Plaintiff was also taking Cymbalta for her depression. [R. 79]. Plaintiff testified that when she has a migraine headache she typically goes to the emergency room or a clinic to get a Toradol injection. [R. 69, 70]. Plaintiff stated that her migraine headaches "put[] pressure on her head" when she bends over. [R. 79]. Plaintiff also testified that after she sits at a computer for ten minutes her eyes start hurting. [R. 74]. When asked by the ALJ why she could not perform a receptionist job where she answered the phone and took some notes, Plaintiff testified that when she talks on the phone "a lot of times the sound hurts [her] ears." [R. 74].

      **B.**    **Vocational Expert's Hearing Testimony**

A vocational expert ("VE") testified at the hearing. The VE stated that Plaintiff's past relevant work included: accounting clerk (sedentary, skilled) and post office clerk (light, semi-skilled). In response to a hypothetical from the ALJ, the VE testified that someone of Plaintiff's age, education, past work experience, and who could lift five to ten pounds with both hands and up to 20 pounds occasionally, could sit for 30 minutes to one hour six out of eight hours in a work day, could stand at one time for an hour, could walk half a block, who needed a sit/stand option, and was not markedly limited in any mental RFC category, would be able to perform Plaintiff's past relevant work as an accounting clerk. [R. 85]. The VE also testified that Plaintiff has transferrable job skills that would enable her to work other jobs such an insurance clerk, information clerk, or security guard. [R. 86-88]. The VE further stated than an individual could miss no more than two days per month and maintain employment in these jobs; but, missing two days a month over several months would preclude employment. [R. 88-89].

**C.     Medical History**

Plaintiff submitted various medical records in support of her claim. Jesus Hernandez, M.D., a rheumatologist, has treated Plaintiff's sarcoidosis and fibromyalgia since 2004. In early 2005, treatment notes indicate that Plaintiff was "fairly stable" with no "overall worsening." [R. 395, 394]. In August 2005, Dr. Hernandez noted that Plaintiff's sarcoidosis was in remission and that her fibromyalgia continued to benefit from Celexa, Ultracet, and Ambien. [R. 393]. In April 2006, Plaintiff was experiencing a flare-up of her fibromyalgia. [R. 391]. Dr. Hernandez recommended that Plaintiff look into an exercise routine and suggested water aerobics as a possibility. [R. 391]. Plaintiff returned for follow-up visits in August and November 2006. [R. 389-390]. She had experienced flare-ups and had experienced discomfort in her feet primarily after stepping on the floor after a period of inactivity. [R. 389-390]. During a visit on January 4, 2007, Plaintiff reported that she was struggling with her fibromyalgia "physically and mentally." [R. 279]. She told Dr. Hernandez she did not believe she would be able to continue to work and take care of herself on a daily basis. Although they discussed disability, Dr. Hernandez told Plaintiff he would be unable to make a determination of her disability. [R. 279]. Plaintiff returned on April 5, 2007 and told Dr. Hernandez she quit her job at the postal service and was working for her husband.[4] [R. 278]. Dr. Hernandez switched Plaintiff's Ambien to Lunesta and provided refills for her other medication. [R. 278]. On October 3, 2007, Plaintiff told Dr. Hernandez she was having discomfort in her right shoulder. [R. 277]. Upon examination, Dr. Hernandez found evidence of a small impingement sign indicative of rotator cuff tendonitis. [R. 277]. Dr. Hernandez indicated that he believed "depression

---

[4] As noted by the ALJ, Plaintiff did not mention that she was working for her husband or what that work entailed during her hearing. [R. 39].

[was] the underlying force" driving Plaintiff's symptoms. He noted that he did not think he could do much else for her at that point but refilled her Ultracet and recommended contacting her family physician about getting a Cymbalta prescription. [R. 277]. Plaintiff saw Dr. Hernandez again on September 30, 2008. [R. 343]. Treatment notes indicate that Plaintiff had continued taking Cymbalta, Lyrica, Ultracet, and Lunesta. Plaintiff continued to show the same symptoms of depression, fatigue, generalized pain, and migratory pain. No inflammation was present upon examination. [R. 343]. Dr. Hernandez noted that he had suggested visiting a nurse practitioner regarding her trigger points but Plaintiff had declined to do so. Dr. Hernandez also noted that Plaintiff did not appear interested in following his advice about the importance of exercising. [R. 343]. On March 24, 2009, Plaintiff told Dr. Hernandez that she had a good week in the previous month but continued to have "good days and bad days." [R. 366]. Dr. Hernandez indicated that "for the most part, [Plaintiff] appear[ed] to have reached a level of stablization in her condition." [R. 366]. She remained on Cymbalta but was no longer taking Lyrica. Dr. Hernandez commented that Plaintiff continued to benefit from Ultracet and Lunesta. [R. 366]. He once again encouraged her to exercise. [R. 366]. Upon checking out from an office visit on September 22, 2009, Plaintiff stated that she wanted to wait on being referred to a podiatrist because her condition was "not that bad." [R. 367].

Plaintiff also sought treatment for her migraines from H. Lee McDaris, M.D., at the Crown Comprehensive Headache Center. [R. 332-338; 349-359; 362-363]. After a consultation on April 6, 2007, Dr. McDaris wrote a letter to Plaintiff's primary care physician indicating that Plaintiff's headache was chronic. He prescribed Topamax as a preventive treatment and recommended that Plaintiff return in ten weeks. [R. 336]. On August 8, 2007, Plaintiff reported having moderate to

5

severe headaches once a month. [R. 335]. Dr. McDaris noted Plaintiff's fibromyalgia and history of depression. He recommended she continue to take Topamax. [R. 335]. When Plaintiff returned on November 8, 2007, she reported having moderate to severe headaches once a month. Treatment notes indicate she had 27 headache free days. [R. 334]. Dr. McDaris continued Plaintiff on Topamax. [R. 334]. On February 5, 2008, Plaintiff reported having had two moderate to severe headaches per month. [R. 333]. She stated that the Lyrica caused drowsiness during the day. Dr. McDaris noted that Plaintiff tolerated the Topamax well and continued her on this treatment for her headaches. [R. 333]. In May 2008, Plaintiff reported having one moderate to severe headache per month. [R. 332]. She continued to tolerate Topamax well, and Dr. McDaris continued this treatment. [R. 332]. In August 2008, Plaintiff reported having three to four moderate to severe headaches per month. [R. 357]. She had received a Maxalt injection at the emergency room that she said worked better than her other medications. [R. 357]. Dr. McDaris continued Plaintiff on Topamax and authorized Maxalt injections as well. [R. 357]. In November 2008, Plaintiff again reported having three to four headaches per month. [R. 358]. Plaintiff saw Dr. McDaris again on February 19, 2009 and stated that she got bad headaches every two weeks. She reported that the Maxalt was not as effective. Dr. McDaris continued Plaintiff on Topamax and provided her with Zomig samples. [R. 359]. Plaintiff returned for follow-up visits on May 19, 2009 and August 20, 2009. [R. 362-363]. Treatment notes indicate that the Maxalt was "working well" and that she continued to tolerate Topamax well.

Plaintiff also submitted treatment notes documenting her visits to her family doctor, Rekha Vankineni, M.D. [R. 369-381]. Many of the examination notes are illegible but Dr. Vankineni prescribed Lexapro and Cymbalta beginning in the spring of 2007. In late 2007 and early 2008, Dr.

Vankeineni's treatment notes indicate that Plaintiff's migraines were "better." [R. 376].

On April 8, 2009, Guendalina Ravello, Ph.D., completed a Psychiatric Review Technique. Based upon Plaintiff's depressive disorder and pain disorder associated with psychological factors, Dr. Ravello opined that Plaintiff had mild limitations in the activities of daily living and in maintaining concentration, persistence, and pace. [R. 323]. She further opined that Plaintiff had moderate difficulties in maintaining social functioning. [R. 323]. No episodes of decompensation were identified. Dr. Ravello also completed a Mental RFC Assessment, in which she opined that Plaintiff was not significantly limited in the following categories: understanding and memory; sustained concentration and persistence; and adaptation. [R. 327-328]. Dr. Ravello indicated that Plaintiff was moderately limited in two of the factors considered in the social interaction category. [R. 328]. According to Dr. Ravello, any feedback in Plaintiff's workplace should be supportive, tactful, and non-confrontational to prevent unnecessary stress. Further, Dr. Ravello indicated that any contact with co-workers should be casual. [R. 329].

On April 18, 2008, Marlin D. Gill, M.D., completed a consultative medical examination. [R. 303]. Plaintiff was in no distress at the time of the examination and her eyes, ears, neck, chest, and abdomen all appeared normal. [R. 304]. Plaintiff's gait was normal and she walked unassisted. Dr. Gill noted that her upper extremities appeared normal and symmetrical and that she used her hands and arms normally with no limitations. Plaintiff demonstrated a full range of motion in the joints and her muscle strength was 5/5. From a standing position, she could squat and come back up again. [R. 302]. Dr. Gill diagnosed Plaintiff with generalized pain-fibromyalgia and migraine headaches. [R. 304].

On April 22, 2008, Jon G. Rogers, Ph.D., completed a consultative psychological

examination. [R. 306]. Plaintiff reported having received mental health treatment at HealthSouth. [R. 206]. Plaintiff also stated that she was experiencing depressed mood, insomnia, fatigue, and difficulty concentrating. [R. 306]. She also reported having irritability, muscle tension, trembling, and trouble falling asleep and staying asleep. [R. 306]. Plaintiff told Dr. Rogers she lived at home with her husband and teenage daughter. She reported getting up at 6:00 a.m. and going to bed at 9:30 p.m. During the day, Plaintiff stated that she could engage in personal hygiene, housecleaning laundry, lying around, and walking around. She reported that she washed clothes, cooked meals, washed dishes, cleaned the house, and paid the bills. [R. 307]. Plaintiff stated that she had a few friends with whom she goes out to eat and visits. [R. 307].

Dr. Rogers' examination revealed that Plaintiff's speech was spontaneous and her articulation was normal. She appeared anxious and reported that most of the time she felt "tired and achy." [R. 308]. She was oriented as to time, place, and person. Her judgment was unimpaired and her insight was good. [R. 308]. Dr. Rogers indicated that Plaintiff is able to function independently. He opined that an ongoing mental health program, coordinated with a work adjustment program, would improve her prognosis. Dr. Rogers diagnosed Plaintiff with the following: pain disorder associated with psychological factors; depressive disorder; headaches; fibromyalgia; feelings of tension, easily fatigueability; daily pain everywhere (7/10); and, psychological stress stemming from her difficulties in relationship to her occupational problems. [R. 309]. Dr. Rogers indicated that Plaintiff's Global Assessment of Functioning ("GAF") score was a 55. [R. 309].

**II.     ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. (*Id.*). Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. (*Id.*). If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v).

In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the instant case, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since February 2, 2007, the alleged onset date. [R. 30]. The ALJ found that Plaintiff has the following severe impairments: fibromyalgia, migraine headaches, and depression. [R. 30]. Nonetheless, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 30]. After careful consideration of the entire record, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except she requires the option to sit or stand at her discretion. Additionally, Plaintiff can lift five to ten pounds with each hand and can occasionally lift 20 pounds with both hands. She can sit 30 to 60 minutes at a time and up to six hours in an 8-hour work day. She can also stand for 60 minutes at a time and walk one-half block at a time. Plaintiff can stand and walk four hours each during an 8-hour work day. She has no more than moderate mental limitation in her ability to accept instructions and respond appropriately to criticism from supervisors, and in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. [R. 32]. The ALJ further determined that Plaintiff is capable of performing her past relevant work as an accounting clerk, which does not require the performance of work-related activities precluded by her RFC. [R. 42]. The ALJ also concluded that Plaintiff has acquired work skills from past relevant work that are

transferrable to other occupations with jobs existing in significant numbers in the national economy. [R. 43]. These jobs include: insurance clerk; information clerk; and security guard. [R. 43]. Based upon this analysis, the ALJ concluded that Plaintiff is not disabled, as that term is defined in the Act. [R. 45].

### III.    Plaintiff's Argument for Reversal

Plaintiff seeks to have the Commissioner's decision reversed, or in the alternative, remanded for further proceedings. [Pl.'s Mem. 11]. Plaintiff contends that the ALJ's decision is not supported by substantial evidence and that improper legal standards were applied because: (1) the ALJ failed properly consider Plaintiff's impairments in combination, and (2) the ALJ failed to properly examine the medical evidence of record. [Pl.'s Mem. 6-11].

### IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c)(3) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence;

11

"[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.   Discussion

After careful review, the court finds that substantial evidence supports the ALJ's opinion and that proper legal standards were applied.

### A.   The ALJ Properly Considered Plaintiff's Impairments in Combination

Plaintiff's first argument is that the ALJ failed to consider her impairments in combination.[5] Plaintiff asserts that although the ALJ recites the evidence documenting her fibromyalgia, migraine headaches, and depression, "nowhere in his decision does he properly consider these impairments in combination." [Pl.'s Mem. 7].

Without question, where a claimant alleges several impairments, the ALJ must consider them in combination. *See e.g., Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987); *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984) (holding that "where, as here, a claimant has alleged a multitude of impairments, a claim for social security benefits based on disability may lie even though none of the impairments, considered individually,

---

[5] Plaintiff does not argue that her disability is caused by her fibromyalgia but rather from a combination of her fibromyalgia and migraine headaches. [Pl.'s Mem. 6-7]. Likewise, Plaintiff concedes that her depression, alone, is not disabling. [Pl.'s Mem. 7]. Indeed, in a pre-hearing order dated December 17, 2009, Plaintiff's representative stated that her impairments individually did not meet or equal a listed impairment. [R. 206].

is disabling. In such instances, it is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled."). However, the Eleventh Circuit has repeatedly held that an ALJ satisfies this duty by stating that he considered whether the claimant suffered from any impairment or combination of impairments. *See e.g.*, *Wilson v. Barnhart,* 284 F.3d 1219, 1224–25 (11th Cir. 2002) (reversing a district court's determination that an ALJ did not consider or discuss the cumulative effects of a claimant's impairments where the ALJ explictly stated that the claimant did not have "an impairment or combination of impairments listed in, or medically equal to one listed" in the regulations); *Jones v. Dep't of Health and Human Servs.,* 941 F.2d 1529, 1533 (11th Cir. 1991) (finding that the ALJ's conclusion that claimant did not have "an impairment or combination of impairments listed in, or medically equal to one listed" in the regulations "evidence[d] consideration of the combined effect of [claimant's] impairments); *see also Hutchinson v. Astrue,* 408 Fed. Appx. 324, 327 (11th Cir. 2011) (finding that the ALJ's statement that [claimant] did not have an 'impairment, individually or in combination' that met one of the listed impairments ...shows that the ALJ considered the combined effects of [claimant's] impairments during her evaluation").

      Here, the ALJ explicitly stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. [R. 30]. He went on to note that "there [were] insufficient findings on examination or diagnostic work-up to confirm the presence of an impairment or combination of impairments which meet or equal in severity the criteria of a listed impairment." [R. 30]. Contrary to Plaintiff's assertions, this statement demonstrates that the ALJ considered the combined effects of her impairments. *See e.g., Wilson,*

284 F.3d at 1224–25; *Jones,* 941 F .2d at 1533. Therefore, the Commissioner's decision is not due to be reversed on this ground.

**B.     The ALJ Properly Examined the Medical Evidence of Record**

Plaintiff's second argument on appeal is that the ALJ failed to properly examine the medical evidence of record. Plaintiff contends that the ALJ erred in rejecting the evidence regarding the frequency, duration, and intensity of her migraine headaches. [Pl.'s Mem. 8]. Plaintiff maintains that the medical evidence supports her testimony as to frequency and duration of the headaches and also supports that the headaches would cause her to miss more than two days per month of work activity. Therefore, according to Plaintiff, the ALJ should have concluded she is disabled based upon this evidence, her testimony, and the VE's testimony. [Pl.'s Mem. 8]. These contentions are unavailing, in part, because other than the VE's testimony that Plaintiff would be precluded from employment if she had to miss more than two days per month, Plaintiff does not cite to the specific evidence of record that she claims supports her testimony regarding the frequency and duration of her headaches. Plaintiff likely has waived this issue for her failure to elaborate on the claim or provide specific authority regarding the claim. *See N.L.R.B. v. McClain of Georgia, Inc.*, 138 F. 3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citations to authorities, are generally deemed to be waived."). Nevertheless, the court has examined the record and finds that the ALJ properly considered the evidence of record and appropriately rejected Plaintiff's testimony regarding the frequency and duration of her headaches in making his RFC determination.

The ALJ documented in great detail the medical evidence regarding Plaintiff's headaches. [R. 32-40]. The ALJ noted that Plaintiff's medically determinable impairments (i.e., her

fibromyalgia and headaches) could reasonably be expected to cause her alleged symptoms. [R. 33]. However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible. [R. 33]. In making this finding regarding Plaintiff's headaches, the ALJ noted that Plaintiff told Dr. Vankineni on April 24, 2007 that her headaches were better since increasing her Topamax. [R. 34]. The ALJ further noted that Dr. McDaris did not assess that claimant was diasbled due to migraines and that Plaintiff did not tell him she quit working due to her migraines. [R. 40]. The ALJ also commented that Plaintiff told Dr. McDaris in November 2007 that she had 27 headache free days a month and that her medication was effective in relieving her headache pain in 60 minutes. [R. 40]. In May 2008, Plaintiff stated she had only one mild headache per month and a moderate to severe headache every two weeks. However, Dr. McDaris did not alter Plaintiff's medication. Additionally, the ALJ pointed out inconsistencies between Plaintiff's headache log (which suggested six migraines in November 2008) and her statement to Dr. McDaris that she had no headache free days. [R. 41; 441]. Plaintiff's headache logs for February, May, and August 2009 also show more headache free days than she told her doctor. [R. 41; 432; 435; 438].

Notably, the ALJ commented that although Plaintiff alleged a doctor had approved a nurse to visit her at home to receive injections to treat her migraines, the record is devoid of any medical evidence supporting that statement. [R. 41]. The ALJ also noted that no physician had restricted Plaintiff's activities due to her headache. Moreover, the ALJ cited Plaintiff's daily activities as a reason for undermining her allegations. Although not dispositive, a claimant's activities may show that her condition was not as limiting as she alleged. *See Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) (finding that substantial evidence supported the ALJ's decision where he considered

the claimant's activities of daily living, frequency of symptoms, and types and dosages of medicines and concluded that claimant's subjective complaints were inconsistent with the medical evidence). Based upon the foregoing, the court is satisfied that the ALJ more than adequately explained his reasons for rejecting Plaintiff's complaints regarding the frequency and duration of her headaches. *See Wilson v. Barnhart,* 284 F.3d 1219, 1226 (11th Cir. 2002) (noting that the "ALJ made a reasonable decision to reject [the claimant's] subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so"). Accordingly, the court concludes that the ALJ properly considered the evidence of record and substantial evidence supports his conclusion that the medical evidence did not support Plaintiff's testimony as to the frequency and duration of her headaches. Thus, the Commissioner's decision is not due to be reversed on this ground.

## VI. Conclusion

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and that proper legal standards were applied. Therefore, the Commissioner's decision is due to be affirmed. A separate order in accordance with this memorandum opinion will be entered.

Done the 26th day of September, 2013.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE